(56 Misc. Rep. 537.)

### PARKER v. SIMPSON.

(Supreme Court, Appellate Term. November 29, 1907.)

INSURANCE—LIFE POLICY—PREMIUM NOTES—LIABILITY OF INSURED.
    The fact that a life policy authorized the company to declare it void for nonpayment of a premium note did not absolve the insured from liability on the note, where the company elected to continue the policy.

Appeal from Municipal Court, Borough of Manhattan, Sixth District.

Action by John Alley Parker against Fred C. Simpson, Jr. Judgment for plaintiff, and defendant appeals. Affirmed.

Argued before GILDERSLEEVE, P. J., and LEVENTRITT and ERLANGER, JJ.

Samuel M. Richardson, for appellant.
Randolph M. Newman, for respondent.

ERLANGER, J.   On the 19th of March, 1906, the Union Central
Life Insurance Company of Cincinnati, Ohio, duly authorized to
transact its business in this state, issued its policy of insurance to the
defendant for and during his life, and thereby, upon his death, agreed
to pay to his wife, if living, otherwise to the executors, administrators,
or assigns of the insured, the sum of $2,000.   The policy recites, among
other things, that in consideration of the payment of $84.32 on its de-
livery, and of the payment of the premium annually thereafter of
$60.64, beginning on the 30th day of March, 1908, at noon in every
year, during the lifetime of the insured, or until 19 such annual premi-
ums shall have been paid, and of the payment, when due, of any and
all notes given for premiums or parts of the same, it insures the life
of the defendant.   The policy was issued subject to a number of con-
ditions—among others, the two following:

### "Application for Insurance.

"(1) I agree that any policy which may be issued under this application
shall not be valid until the first premium is paid to the company, or its au-
thorized agent, and the receipt therefor countersigned by the agent and de-
livered during my life."

### "Conditions.

"(1) **Payment of Premium.** The failure to pay any of the first three years'
premiums, or any note, or interest upon the notes, given to the company there-
for, on or before the day upon which such premiums, notes, or interest be-
comes due, shall avoid and nullify this policy, without action on the part of
the company or notice to the insured or beneficiary, and all payments made
upon this policy shall be deemed earned as premiums during its currency.
Any and all notes, with their conditions, which may be given for premiums
or loans upon the securing of this policy, are hereby made a part of this con-
tract of insurance."

Contemporaneously with the issuing and delivery of said policy, on
March 19, 1906, there was paid on account of the $84.32, the first
payment mentioned therein, the sum of $23.86 in cash, and at the
same time there was executed and delivered by the defendant to the
company his promissory note, dated on that day, whereby he agreed
to pay to it, on or before March 30, 1907, the sum of $60.46, without
discount, at the New York office of the company, "being for premium
on policy No. 317,798 in said company, due March 30, 1907."   The
note contained this additional clause:

"Said policy, including all conditions therein for surrender, or continuance
as a paid-up term policy, shall, without notice to any party or parties in-
terested therein, be null and void on the failure to pay this note at maturity,
with interest at 6 per cent. per annum."

When the payment mentioned was made and the note delivered,
plaintiff received his policy, together with a receipt for the first pre-
mium of $84.32, subject to the conditions mentioned in the note and
receipt.   Before the note became due, plaintiff, acting for the com-
pany, caused to be sent to the defendant a notice to the effect that
the note for premium due on March 30, 1907, would then mature,
and that prompt payment thereof "is of vital importance to your insur-
ance."   On March 30, 1907, the defendant did not meet his note,
but, instead, wrote a letter to the plaintiff, in which, among other
things, he said:

"I have paid for protection up until March 30th of this year, and now return by special messenger, policy No. 317,798, with instructions to cancel same on that date."

Plaintiff promptly, and on the same day, returned the policy, and requested payment of the note in full or in part, as was suggested in a prior letter of the same date. The defendant refused to retain the policy and again returned it to plaintiff. The defendant defaulted in meeting the note, and thereupon this action was brought to recover the amount due thereon. Many defenses are set up in the answer. For example, it is pleaded that plaintiff is not a bona fide holder for value; that the policy lapsed by force of its own terms on March 30, 1907, and that defendant after that date was entitled to none of the benefits thereunder; that because the first premium was not paid the policy never became operative, and that there is a complete failure of consideration; and that plaintiff at no time during the year 1906 was authorized to act as agent, not having procured a license from the Superintendent of Insurance as required by the laws of this state. The defenses were held by the court to be untenable, and plaintiff recovered. Defendant appeals.

From the foregoing facts it is clear that by the contract between the parties nothing was to be paid by way of premium until the 30th of March, 1908, except the balance due on the premium mentioned in the note. The delivery of the policy and receipt for the first year's premium was not only a good and valid consideration for the note, but the defendant was absolutely protected under the terms of the policy, and, had he died during the life of the note, his beneficiary would have become entitled to the amount of the insurance. The contention of the defendant that under the conditions of the policy above referred to, and of the note, the policy lapsed upon the nonpayment of the premiums and voided itself by its own terms, begs the question. The argument must necessarily be predicated upon the theory that either party could declare the contract at an end because one of them reserved the right to do so under certain conditions. If this were true, few contracts containing conditions could be enforced. One of the maxims in the law is that no one shall be permitted to take advantage of his own wrong. This is exactly what was sought to be done here. The defendant breaks his contract, and then claims that because the company could have terminated the policy, but did not elect to do so, he may refuse to pay the sum owing from him. All the conditions above recited, whether in the policy, the note, or the receipt, were for the benefit of the company, and, despite the rigor of the terms, the company had the right to continue the policy in force if it elected to do so. In this case it made its election to continue it. And we can see no way by which the defendant can escape liability. The case may be illustrated by the following example: If A. covenants with B. to perform certain acts, and it is stipulated that for the breach of any of them the contract shall fail, can it be said that A. may deliberately violate the terms of the compact, and thus escape the penalty of such breach? If the answer be in the affirmative, the law would resolve itself into a positive absurdity. The analogy between the case at bar and the illustration is readily apparent. Here

the insurance company determined to keep the policy alive and waived its right to cancel it, and it does not lie in the mouth of defendant to say:

"You shall not or cannot do it, because you have covenanted with me, if I do not pay my note, my policy shall be void."

The defendant further urges upon us that the acceptance of the sum of $23.86 in cash shows that the policy was "term rated"; that is to say, that it was in force from March 16, 1906, when it was issued, until March 30, 1907, when the note became due. The plaintiff, called as a witness, testified that the 20-year term began to run from March 30, 1907; and it is argued, from that, that the cash payment was for protection up to that time. But nowhere is it shown why the premiums from March 19, 1906, to March 30, 1907, a little over a year, was but $23.86, when the annual premium in the policy is fixed at $60.46. It is denied by plaintiff that the policy was "term rated," so that the difference in rate is wholly a matter of conjecture. It may be that a premium rate of $84.32 was agreed upon for the first two years as a consideration of the acceptance of the policy.

The errors complained of by the exclusion of proof are not of sufficient moment to require us to reverse the judgment. The conversations sought to be elicited were wholly immaterial to the issue. Besides, parol evidence was not competent to vary the terms of the note.

The judgment must be affirmed, with costs.

GILDERSLEEVE, P. J., and LEVENTRITT, J., concur in result.